In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00117-CV
______________________________


STEPHEN M. SCHEXNAYDER, M.D., Appellant
 
V.
 
SHANTRECE DANIELS, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF 
JOURNEE DANIELS, Appellee


                                              

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 03C1368-102


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N
          Stephen M. Schexnayder, M.D., a resident of Arkansas, has filed an interlocutory
appeal from an order denying his special appearance in a medical malpractice lawsuit in
which he contested the jurisdiction of the Texas court over him. The suit was filed against
him by Shantrece Daniels, in her individual capacity, and as representative of the estate
of her deceased daughter, Journee Daniels. Schexnayder attempts to avoid jurisdiction
based on an alleged lack of minimum contacts with Texas.
Background
        The lawsuit is based on events leading to Journee's death June 11, 2003. Journee,
age  two,  was  hospitalized  at  Wadley  Regional  Medical  Center  in  Texarkana,  Texas,
June 10, 2003, in serious condition. On June 11, Wadley contacted Arkansas Children's
Hospital (ACH) in Little Rock, and Schexnayder, who was the intensive care unit's
attending physician at that time, approved the transfer on behalf of ACH. ACH was to
provide transportation of the child to Little Rock. A transport team was dispatched to
Texarkana which included two ACH employees and one resident physician, Barrett Lewis,
M.D. Schexnayder did not personally go to Texarkana. 
          The ACH team arrived at Wadley and took over Journee's care in an attempt to
stabilize her adequately for transport. In this process, the team apprised Schexnayder by
telephone of Journee's condition and Schexnayder directed the care to be given. There
evidently was a problem with the child's oxygen tube, her oxygen levels were low, and the
ACH team attempted to insert different tubes (in sequence) in an attempt to avoid air
leakage. It appears the team ultimately intubated the child successfully, but Journee (who
had already coded and been resuscitated at least once) again coded, and resuscitation
efforts were unsuccessful. It was Schexnayder who ultimately made the decision that
further resuscitation efforts would be futile. Journee died at Wadley. 
Standard of Review
          A nonresident defendant challenging personal jurisdiction through a special
appearance carries the burden of negating all bases of personal jurisdiction. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002). Whether a court has
personal jurisdiction over a defendant is a question of law. Am. Type Culture Collection,
Inc. v. Coleman, 83 S.W.3d 801, 805–06 (Tex. 2002) (citing Marchand, 83 S.W.3d at 794). 
In resolving this question of law, a trial court must frequently resolve questions of fact. 
Coleman, 83 S.W.3d at 806 (citing Marchand, 83 S.W.3d at 794). Our courts of appeals
may review the fact-findings for both legal and factual sufficiency. Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex.1996). We review de novo the trial court's legal conclusions. 
Marchand, 83 S.W.3d at 794; E.L.M. LeBlanc v. Kyle, 28 S.W.3d 99, 101 (Tex.
App.—Texarkana 2000, pet. denied). Where the record contains no findings of fact and
conclusions of law (as in this case), we must imply all findings of fact necessary to support
the trial court's findings that are supported by the evidence. Marchand, 83 S.W.3d at 795.
          In this case, Schexnayder contends the evidence clearly demonstrates he is not
subject to jurisdiction. There is no specific argument directed at either legal or factual
sufficiency as such—the argument is that the evidence concerning his connection to the
medical care and treatment of the patient (with which Schexnayder does not disagree or
controvert), does not meet the legal standard for imposing the jurisdiction of Texas courts.
Scope of Personal Jurisdiction
          The Texas long-arm statute permits courts to exercise personal jurisdiction over a
nonresident defendant, limited by the federal constitutional requirements of due process. 
Marchand, 83 S.W.3d at 795; U-Anchor Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex.
1977). The general rubric applicable to personal jurisdiction states that this limitation is not
exceeded when (1) the defendant has established minimum contacts with Texas, and (2)
the exercise of jurisdiction comports with the traditional notions of fair play and substantial
justice. Marchand, 83 S.W.3d at 795 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310,
316 (1945)). 
          The purpose of the minimum contacts analysis is to protect the defendant from
being haled into court when its relationship with Texas is too attenuated to support
jurisdiction. Coleman, 83 S.W.3d at 806; Schlobohm v. Schapiro, 784 S.W.2d 355, 357
(Tex. 1990). Minimum contacts may not be shown through the unilateral acts of a third
party; nor may random, fortuitous, or attenuated contacts with Texas provide the sole
justification to exercise personal jurisdiction. Burger King Corp. v. Rudzewiez, 471 U.S.
462, 475 (1985); Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991). However, as the United States Supreme Court further
explained in Rudzewiez:
where the defendant "deliberately" has engaged in significant activities within
a State, or has created "continuing obligations" between himself and
residents of the forum, he manifestly has availed himself of the privilege of
conducting business there, and because his activities are shielded by "the
benefits and protections" of the forum's laws it is presumptively not
unreasonable to require him to submit to the burdens of litigation in that
forum as well.
471 U.S. at 475–76 (citations omitted); see also HMS Aviation v. Layale Enters., S.A., 149
S.W.3d 182, 191 (Tex. App.—Fort Worth 2004, no pet.).
          As the cases have developed, there are two variations within the bounds of personal
jurisdiction. Personal jurisdiction exists if the nonresident defendant's minimum contacts
give rise to either specific or general jurisdiction. Marchand, 83 S.W.3d at 795; Guardian
Royal Exch. Assurance, Ltd., 815 S.W.2d at 226. 
          Specific jurisdiction exists when the defendant's liability arises from or is related to
an activity conducted within the forum. Marchand, 83 S.W.3d at 796 (citing Guardian
Royal Exch. Assurance, Ltd., 815 S.W.2d at 228). For a court to exercise specific
jurisdiction over a nonresident defendant, two requirements must be met: (1) the
defendant's contacts with the forum must be purposeful, and (2) the cause of action must
arise from or relate to those contacts. Coleman, 83 S.W.3d at 807. 
          General jurisdiction exists when the defendant's contacts with Texas "are
continuous and systematic so that the forum may exercise personal jurisdiction over the
defendant even if the cause of action did not arise from or relate to activities conducted
within the forum state." Marchand, 83 S.W.3d at 796. This is described as being a more
demanding minimum-contacts analysis than specific jurisdiction. Coleman, 83 S.W.3d at
807. Thus, general jurisdiction allows a forum to exercise jurisdiction over a defendant
even if the cause of action did not arise from or relate to a defendant's contacts with the
forum. Id.; Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at 228. Those contacts
should be such as to justify categorizing the defendant as a resident of this State. Thus,
one suggested method of determining whether general jurisdiction over a defendant truly
lies in Texas is by determining whether a citizen of another state, on a claim for
wrongdoing in another state, could nevertheless properly sue the defendant in Texas
courts. See Charles Rhodes, The Predictability Principle in Personal Jurisdiction Doctrine: 
A Case Study on the Effects of a "Generally" too Broad, but "Specifically" too Narrow
Approach to Minimum Contacts, 57 Baylor L. Rev. 135, 149–55 (2005).
          Under either formulation, minimum contacts are required to justify the application
of the concept. One description of the purpose of the minimum-contacts analysis in the
context of purposeful acts is to prevent a foreign corporation from being haled into Texas
courts when its relationship to Texas is so remote that it could not reasonably anticipate
having to defend itself in a Texas court. World-Wide Volkswagen Corp. v. Woodson, 444
U.S. 286, 297 (1980); Hitachi Shin Din Cable, Ltd. v. Cain, 106 S.W.3d 776, 782 (Tex.
App.—Texarkana 2003, no pet.).
Evidence of Minimum Contacts
          Schexnayder provided evidence that he is a salaried employee of the University of
Arkansas Center for Medical Sciences and is on staff at ACH. He provided evidence that
he is not a Texas resident, owns no property in Texas, was not and has never been
licensed to practice medicine in Texas, does not operate an office in Texas, has no staff
privileges in any Texas hospital, and has never personally advertised his services or
recruited patients in Texas. Schexnayder acknowledges he was contacted in three
telephone conversations, all originating in Texas and totaling about an hour in length, from
individuals caring for Journee. He points out that he did not initiate the calls, but
acknowledges that the conversations were all directly connected with Journee's care. 
Daniels presented evidence that the telephone conversations involved a discussion about
the condition of the patient, and deposition testimony that Schexnayder, as an active
participant with the team, took over as her attending physician and became directly
engaged in her care. We have reviewed the audio recordings of the conversations. It is
apparent that, in this emergency situation, Lewis was not merely asking Schexnayder for
advice and then determining whether to follow it, but that Schexnayder was directing the
team in its care of Journee. 
          Lewis called Schexnayder after he arrived at the hospital and explained the child's
apparent problems, then followed Schexnayder's orders about procedures to be followed. 
After Journee coded, Lewis called again, and (except for one break when the connection
failed) Schexnayder stayed on the telephone with Lewis from then until Journee was
eventually pronounced dead. During this process, Schexnayder gave Lewis detailed
instructions on treating and medicating Journee, including multiple dosages of epinephrine
and the administration of needle decompression on her chest, all of which directions were
promptly followed by Lewis. Schexnayder ultimately made the decision that further efforts
to save the child would be futile.
          This evidence is largely uncontroverted. The parties agree about the sequence of
events and about the actions that occurred. What they disagree on, and the problem we
face, is the legal impact of that evidence. Thus, our review of the order is de novo, based
on all the evidence before the Court.
Analysis
          Specific Jurisdiction
          Schexnayder contends the evidence is insufficient to support a finding of specific
jurisdiction and cites Brocail v. Anderson, M.D., 132 S.W.3d 552 (Tex. App.—Houston
[14th Dist.] 2004, no pet.). In Brocail, a doctor performed surgery on a professional
baseball player in Michigan, prescribed therapy for him, and after his patient moved to
Texas, continued to monitor his progress and to prescribe therapy. Brocail, the patient
baseball player, sued in Texas, but the court found that there was nothing about Texas
involved at the time of the surgery (which was the alleged tort) and that Brocail's later move
to Texas, even with continuing contact with the doctor, was not sufficient to create even a
tenuous relationship with this forum. The court reasoned that the continuance of the
relationship in Texas was as a result of Brocail's actions, not the doctor's. 
          As noted below, the facts in the instant case are distinguishable from Brocail. 
Further, they do not match those set out in any Texas decision. The closest case appears
to be Mason v. Shelby Co. Healthcare Corp., 919 F. Supp. 235 (S.D. Miss. 1996), a federal
district court decision, also cited by Schexnayder. In Mason, the question was whether a
Tennessee emergency room physician had adequate contacts to justify specific
jurisdiction. An automobile accident occurred in Mississippi, and on request by the
Mississippi hospital, the Tennessee hospital sent a team by helicopter to pick up the
patient. The Tennessee physician did not travel, but talked by telephone to medical
personnel at the Mississippi hospital about the impending transport. He also talked by
telephone to the transport team while the patient was being transported. The patient died
in the air (allegedly from medication), and a lawsuit followed. Although the plaintiff argued
that the Tennessee physician had directed the use of the drug that allegedly was a cause
of the death, the federal court noted that it had before it transcripts of every telephone
conversation, and that such transcripts did not show that the doctor advised or participated
in the decision to administer the drug to the patient. On those facts, the federal court
dismissed the case, concluding that the telephone calls were insufficient to satisfy the
minimum-contacts requirement. Based on this evidence, the federal court applied the
third-party concept and concluded the doctor should not be subjected to jurisdiction in
Mississippi because of the unilateral activity of others.
          There is one substantive difference between that case and the present one: the
extent of the physically absent physician's involvement with the team on site in providing
medical care for the patient. Based on the record in the instant case, we necessarily
conclude that Schexnayder was not merely providing advice to the team, but that he fully
participated in the care given by the team to this child and did, in fact, make the most
important decisions concerning her care. He was not a mere bystander, but was effectively
there with the team in all but body. That team was sent from Little Rock to Texas to take
over the full medical care for this child, and Schexnayder was a part of that team. Had he
been physically present in Texas, jurisdiction would not be an issue. He acknowledges that
the other team members who were physically present do not contest jurisdiction of the
Texas court over them. There is no logical reason why the team leader, although not
physically present in Texas, but who headed up the medical treatment by telephone from
Arkansas, should not likewise be subject to jurisdiction in Texas. The evidence indicates
that, from the time the team instituted stabilizing procedures on the child until her ultimate
demise, all at Wadley hospital in Texas, the team was in complete control of her care and
treatment. The child was the patient of the team during that time, and as a fully
participating member of that team, Schexnayder was, except for not being physically
present, as involved as any of its other members.  
          Schexnayder contends that, because he was present only by telephone calls
initiated from Texas, he was not adequately present at this event. We disagree. Under
some circumstances, as in the situation discussed in Michiana, a telephone call may be
nothing more than a mere contact with another person. Michiana Easy Livin' Country, Inc.,
v. Holten, 168 S.W.3d 777 (Tex. 2005). The facts of the instant case reflect much more
than a mere contact, or more than a request for advice or consultation. If the evidence
showed that Schexnayder was only providing advice as a consultant to a doctor in Texas,
an entirely different situation would exist—and one more directly in line with the facts and
analysis in Mason. Minimum contacts exist here because Schexnayder was actively
practicing medicine in Texas by directing the actions of his hospital's team while it was in
Texas. That contact was an intentional consummation of an agreement to care for
Journee in the State of Texas. The contact was therefore purposeful—not accidental or
fortuitous—and Daniels' claims arise from that contact.
          As described by the United States Supreme Court, a nonresident defendant that has
"purposefully availed" itself of the privileges and benefits of conducting business in the
foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. 
Rudzewiez, 471 U.S. at 474–76 (discussing constitutional boundaries of personal
jurisdiction); see Marchand, 83 S.W.3d at 795. A nonresident defendant that purposefully
has availed itself of the privileges and benefits of conducting business in Texas has
sufficient contacts to allow Texas courts to exercise personal jurisdiction over the
nonresident. Marchand, 83 S.W.3d at 795. 
          Although not determinative, foreseeability is a consideration in deciding whether the
nonresident defendant has purposefully established "minimum contacts" with the forum
state. Id.; Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at 227. Under the specific
facts of this case, where Schexnayder directed the details of Journee's care and treatment
in Texas, albeit by telephone calls initiated from Texas to him in Arkansas, and the patient
died during such care and treatment, Schexnayder could have reasonably anticipated
having to defend himself in a Texas court. Under this evidence, we conclude that
constitutionally adequate minimum contacts existed. However, even though there are
contacts with Texas, and even though they reach the minimum necessary to justify
exercise of jurisdiction by Texas courts, the additional question is whether doing so under
these facts is outside the range of what could be considered "fair play and substantial
justice." Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at 226; Rudzewiez, 471 U.S.
at 475–76. 
          Once it has been determined that the nonresident defendant purposefully
established minimum contacts with the forum state, we then evaluate the contacts in light
of other factors to determine whether the assertion of personal jurisdiction comports with
fair play and substantial justice. Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at
228. These factors include (1) the burden on the defendant, (2) the interests of the forum
state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and
effective relief, (4) the interstate judicial system's interest in obtaining the most efficient
resolution of controversies, and (5) the shared interest of the several states in furthering
fundamental substantive social policies. Id. (quoting World-Wide Volkswagen Corp., 444
U.S. at 292; Rudzewiez, 471 U.S. at 477; PHC-Minden, L.P. v. Kimberly-Clark Corp., No.
12-04-00259-CV, 2005 WL 1979102, at *3 (Tex. App.—Tyler Aug. 17, 2005, pet. filed) (not
designated for publication). In that portion of the inquiry, it is the defendant's job to
present "a compelling case that the presence of some consideration would render
jurisdiction unreasonable." Rudzewiez, 471 U.S. at 477; Guardian Royal Exch. Assurance,
Ltd., 815 S.W.2d at 231. Even if the nonresident defendant has purposefully established
minimum contacts with the forum state, the exercise of jurisdiction may not be fair and
reasonable under the facts in a particular case. Rudzewiez, 471 U.S. at 479; Guardian
Royal Exch. Assurance, Ltd., 815 S.W.2d at 231.
          Applying the named factors, we recognize there would be some burden on
Schexnayder for having to defend himself in a lawsuit 150 miles away from his home, in
another state. However, we also recognize that distance is not so important a factor now
as it has been historically. Also, because Schexnayder is licensed in Arkansas, not in
Texas, it would appear that, in connection with a medical malpractice claim, his state of
residence would have more interest in the dispute than would Texas. However, because
Journee was a Texas resident, this State has an inherent interest in protecting its citizens
and providing them with a remedy for alleged tortious injuries inflicted on them within this
State. Daniels also has an inherent interest in pursuing the lawsuit locally rather than
being required to travel the 150 miles to pursue her interests—perhaps under a different
set of laws than those of her resident state. The factor of efficiency does not appear to be
an issue in any respect. 
          The final factor involves the shared interest of the states in furthering fundamental
substantive social policies. That concept is implicated in this case. There is a fundamental
notion that the citizens of each state should be able to access knowledge and specialized
expertise and seek assistance across state lines without unnecessary hindrance. 
Competing against that is the notion that an injured party should be able to seek
recompense—in the state of the party's residence where the event occurred—for damages
allegedly caused by the negligent behavior of another. 
          In this case, except for geographic considerations, there is no suggested reason
why the case should be brought in Arkansas rather than Texas. Based on evidence that
Schexnayder was the one who approved Journee's transfer to ACH and was actively
involved with the transport team in treating her as a patient in this State, we conclude the
contacts involving Schexnayder were not so attenuated as to violate concepts of due
process. 
          Although we recognize the bright-line attraction of looking solely to the place where
the calls originated as determining whether jurisdiction lies in Texas, that simplistic formula
is not persuasive. Compare Mason, 919 F. Supp. 235, with Thompson v. Chrysler Motors
Corp., 755 F.2d 1162, 1171 (5th Cir. 1985), and Brown v. Flowers Indus., Inc., 688 F.2d
328, 333 (5th Cir. 1982). Other factors necessarily explain the nature of telephone
conversations, and the question of whether the resident of one state first called another
should not control in all situations. 
          We conclude that, under this evidence and under the application of the law to that
evidence as set out above, Schexnayder's contacts with Texas were sufficient in this
particular instance to meet the requirements of due process and allow the litigation to
proceed in this State. We emphasize, however, that this ruling is limited to these facts, and
should not automatically be expanded to dissimilar situations. It is critical to our analysis
that the team in this case was from Schexnayder's own hospital and that it was working
together on a person who had been accepted as a patient of that hospital. 
          General Jurisdiction
          As previously set out, determining whether general jurisdiction exists requires a
more stringent level of analysis than specific jurisdiction. General jurisdiction exists when
the contacts are continuous and systematic so that the forum may exercise personal
jurisdiction over the defendant even if the cause of action did not arise from or relate to
activities conducted within the forum state. Marchand, 83 S.W.3d at 796; Coleman, 83
S.W.3d at 807.
          In this case, there is no evidence that Schexnayder did business on a regular basis
in Texas. Schexnayder has never advertised his services in Texas, but his services are
advertised in the websites of ACH and the University of Arkansas for Medical Sciences,
along with his job description as critical care section chief, certifications, background, and
contact information. Daniels also points out that the hospitals advertise that they provide
helicopter transport throughout Arkansas and the region for critically ill and injured infants
and children to their specialized facility. There was also evidence that Schexnayder had
received patients from Texas hospitals about seven times in the months around Journee's
death and that he had assisted with the care of patients by telephone conference
numerous times. 
          Daniels did not allege that jurisdiction exists because Schexnayder maintained an
office, warehouse space, a mailing address, a telephone listing, subscribed to an
answering service, or had or has any other direct business location in Texas. Cf. Michel
v. Rocket Eng'r Corp., 45 S.W.3d 658, 666–72 (Tex. App.—Fort Worth 2001, no pet.) (first
inquiry in general jurisdiction analysis is whether nonresident business has created
"general business presence" in forum state).
          We do not find the testimony that Schexnayder talked on the telephone with doctors
in Texas, even assisting those doctors in treatment of their patients, establishes either a
continuous or systematic presence in the State of such a nature as to justify treating him
as a person who might be haled into court in Texas. Thus, general jurisdiction does not
lie on these facts. The remaining question is whether that evidence, together with
evidence about the ACH and University of Arkansas for Medical Sciences websites, might
combine to show such a presence. 
          We review the evidence related to the websites to determine whether it is sufficient
to support the implied findings of specific and general jurisdiction by the trial court. 
"Internet use is characterized as falling within three categories on a sliding scale for
purposes of establishing personal jurisdiction." Michel, 45 S.W.3d at 677 (citing Jones v.
Beech Aircraft Corp., 995 S.W.2d 767, 772 (Tex. App.—San Antonio 1999, pet. dism'd
w.o.j.)). At one end of the scale are websites clearly used for transacting business over
the internet, such as entering into contracts and knowing and repeated transmission of files
of information, which may be sufficient to establish minimum contacts with a state. Michel,
45 S.W.3d at 677. On the other end of the spectrum are "passive" websites that are used
only for advertising over the internet and are not sufficient to establish minimum contacts,
even though they are accessible to residents of a particular state. Id. In the middle are
"interactive" websites that allow the "exchange" of information between a potential
customer and a host computer. Id. Jurisdiction in cases involving interactive websites is
determined by the degree of interaction. Id.; I & JC Corp. v. Helen of Troy L.P., 164
S.W.3d 877, 889 (Tex. App.—El Paso 2005, pet. denied). Texas courts (including this
one) have used this test in determining whether an internet site is sufficient to support the
exercise of general jurisdiction over a defendant.


 
          In this case, the evidence shows that Schexnayder's biography, credentials, and job
description were all set out on the ACH website. The main thrust of the website is
informational in nature—which would necessarily lead to the potential for use of ACH for
its specialized purpose. The evidence shows that it was possible to interact via e-mail with
the site, that physicians could register for continuing medical education on the site, and
that individuals could apply online for jobs. The evidence does not indicate that doctors
interacted on patient care online. Even if we ascribed all of the actions on the website to
Schexnayder, this level of connectivity simply does not rise to the level or purpose of
interaction that would justify finding that Schexnayder had submitted himself to the
jurisdiction of Texas courts. The evidence does not reach the higher level necessary to
justify a finding that the minimum contacts necessary to support a finding that the website,
either alone or in combination with the other evidence subjected him to the general
jurisdiction of the court.
Conclusion 
          Because we find the evidence of minimum contacts is sufficient to support a finding
of specific jurisdiction, we affirm the judgment.
 
 
                                                                Donald R. Ross
                                                                Justice 

Date Submitted:      January 25, 2006
Date Decided:         February 23, 2006