# NO. 12-07-00027-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ACADEMY OF SKILLS & KNOWLEDGE, INC., APPELLANT/CROSS-APPELLEE,* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #3* |
| *CHARTER SCHOOLS, USA, INC., APPELLEE/CROSS-APPELLANT* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Academy of Skills & Knowledge, Inc. ("ASK") appeals following summary judgment proceedings and a jury trial in a civil lawsuit between ASK and Charter Schools, USA, Inc. ("CSUSA"). ASK raises twelve issues on appeal. CSUSA raises three cross issues. We affirm in part, and reverse and render in part.

## BACKGROUND

ASK is a Texas nonprofit corporation formed in 1996 for the purpose of providing alternative educational opportunities to children. ASK initially operated a private school, the Academy of Skills & Knowledge. In 1998, ASK converted the private school to an open enrollment charter school, retaining the name Academy of Skills & Knowledge.[1]

---

[1] The school was later renamed Cumberland Academy.

The school experienced substantial enrollment growth as a charter school because parents were no longer required to pay private school tuition in order to enroll their children. In 2000, ASK's board of directors began to explore the possibility of employing a management company to manage its school. The directors believed that a specialized management company would possess expertise that would enhance and improve the operations and educational quality of the school.

Eventually, ASK entered into a contract for management of the school with Charter Schools USA at Academy of Skills & Knowledge, L.C. ("LC"), a wholly owned subsidiary of CSUSA. The management contract would become effective before the school's 2001-2002 school year and would continue for five years. Despite the fact that CSUSA was not explicitly granted any rights or obligated to perform any functions under the management contract, CSUSA's president, Jonathan Hage, also signed the management contract on behalf of CSUSA.

During contract negotiations, the ASK board of directors decided to relocate the school in order to accommodate a larger student population. A new, larger facility was located and a lease was entered into between ASK and the facility's owner. On September 1, 2001, ASK's school began its 2001-2002 school year at this new facility and under the new management contract.

Relations between ASK and the management companies gradually became strained. After the school year ended, the management contract was terminated. Eventually, civil litigation resulted between ASK and CSUSA, with each party asserting multiple causes of action against the other. Following summary judgment proceedings, the parties tried their remaining causes before a jury.[2] At the close of evidence, the trial court granted a directed verdict against ASK regarding its sole remaining cause of action, a breach of contract claim against CSUSA. Following a jury verdict, the trial court subsequently entered a judgment against ASK for $250,889.59 plus $50,000.00 for attorney's fees. This appeal followed.

---

[2] ASK states the following in its brief:

> From what started as a simple attempt to retrieve financial records from a management company, this case has evolved into a veritable legal hydra. Allegations by either party have typically spawned multiple responses which, in turn, led to a further expansion of matters before the [trial] court. By the time the case proceeded to trial, the trial court had, through multiple summary judgments, eliminated almost all the claims that had been raised by either party throughout the case.

ASK, in its first seven issues, and CSUSA, in its third cross issue, challenge various trial court orders granting partial summary judgment.

**Standard of Review**

We review a trial court's grant of summary judgment de novo. ***Mid-Century Ins. Co. of Tex. v. Ademaj***, 243 S.W.3d 618, 621 (Tex. 2007). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. ***Quick v. City of Austin***, 7 S.W.3d 109, 116 (Tex. 1999). When, as here, a party moves for both a traditional and a no evidence summary judgment, we first review the trial court's summary judgment under the no evidence standard. ***Ford Motor Co. v. Ridgway***, 135 S.W.3d 598, 600 (Tex. 2004). If the no evidence summary judgment was properly granted, we do not reach arguments under the traditional motion for summary judgment. *See id.* at 602.

In an appeal of a summary judgment proceeding, our review is a limited one. "Issues not *expressly presented* to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c) (emphasis added). When reviewing a summary judgment, courts of appeals should consider all summary judgment grounds ruled on by the trial court and preserved for appellate review that are necessary for final disposition of the appeal. ***Cincinnati Life Ins. Co. v. Cates***, 927 S.W.2d 623, 626 (Tex. 1996). Further, an appellate court may, in the interest of judicial economy, consider other grounds that the movant preserved for review, despite the fact that the trial court did not rule on them. *Id.*

*No Evidence Summary Judgment*

Rule 166a(i) of the Texas Rules of Civil Procedure provides as follows:

> **No-Evidence Motion.** After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The [trial] court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX. R. CIV. P. 166a(i). A summary judgment motion pursuant to Rule 166a(i) is essentially a motion for a pretrial directed verdict. ***Mack Trucks, Inc. v. Tamez***, 206 S.W.3d 572, 581-82 (Tex. 2006)

(citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks*, 206 S.W.3d at 582 (citing *Havner*, 953 S.W.2d at 711). A no evidence motion for summary judgment must be granted if (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (citing TEX. R. CIV. P. 166a(i)). A fact is "material" if it affects the ultimate outcome of the lawsuit under the governing law. *Pierce v. Wash. Mut. Bank*, 226 S.W.3d 711, 714 (Tex. App.–Tyler 2007, pet. denied). A material fact issue is "genuine" if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party. *Pierce*, 226 S.W.3d at 714; *see Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam) ("We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions.").

In reviewing a ruling on a no evidence summary judgment motion, we review the evidence presented by the motion and response in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks*, 206 S.W.3d at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence as to the essential element in question. *Redmon v. Griffith*, 202 S.W.3d 225, 232 (Tex. App.–Tyler 2006, pet. denied) (citing *Havner*, 953 S.W.2d at 711). If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *Id.* at 232-33 (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

### Traditional Summary Judgment

Rule 166a(c) governs traditional motions for summary judgment and provides as follows:

> **Motion and Proceedings Thereon.** The motion for summary judgment shall state the specific grounds therefor. . . . The judgment sought shall be rendered forthwith if (i) the deposition transcripts,

4

interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.

TEX. R. CIV. P. 166a(c).

When reviewing a ruling on a traditional motion for summary judgment, we must examine the entire summary judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex. 2007) (citing *City of Keller*, 168 S.W.3d at 824-25). For a party to prevail on a traditional motion for summary judgment, it must conclusively establish the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). As stated above, a fact is "material" if it affects the ultimate outcome of the lawsuit under the governing law. *Pierce*, 226 S.W.3d at 714. A material fact issue is "genuine" if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party. *Pierce*, 226 S.W.3d at 714; *see* *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam) (appellate court reviewing a summary judgment must consider whether reasonable and fair minded jurors could differ in their conclusions). Evidence is conclusive only if reasonable and fair minded jurors could not differ in their conclusions. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755-56 (Tex. 2007) (per curiam) (citing *Spates*, 186 S.W.3d at 568). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *Pierce*, 226 S.W.3d at 714 (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex.1979)).

**Summary Judgment – Contract Damages**

In its first, second, third, and fourth issues, ASK asserts that the trial court erroneously granted summary judgment against ASK regarding four types of damages alleged by ASK in its breach of contract cause of action. But, even if we were to sustain these issues, the outcome of this appeal would not be affected.[3]

---

[3] The trial court also issued an order limiting ASK's breach of contract cause of action to breaches based on only three sections of the management contract. The trial court explicitly ruled that privity of contract did not exist between ASK and CSUSA regarding the other sections of the contract. If it has done so at all, ASK has challenged this ruling in its fifth issue only, which, as explained below, we overrule. Therefore, because it was unnecessary to do so, we have not considered contract damages that would have related solely to other parts of the management contract. *See* TEX. R. APP. P. 47.1.

5

*Directed Verdict*

After the trial court's order granting summary judgment on four types of damages alleged by ASK in its breach of contract cause of action, that cause of action, with the three remaining types of damages, proceeded to trial. Following ASK's case in chief, CSUSA moved for a directed verdict regarding this cause of action. The trial court granted a directed verdict in favor of CSUSA, stating on the record that ASK had failed to present evidence of breach and of the three types of damages.

In its brief, ASK has failed to raise an issue concerning whether the trial court erroneously granted CSUSA's motion for a directed verdict. An appellant's brief must state concisely all issues or points presented for review. *Bankhead v. Maddox*, 135 S.W.3d 162, 163 (Tex. App.–Tyler 2004, no pet.) (citing TEX. R. APP. P. 38.1(e)). An issue presented in an appellant's brief is sufficient if it directs the attention of the appellate court to the error about which the complaint is made. *Bankhead*, 135 S.W.3d at 163 (citing *Maida v. Fire Ins. Exch.*, 990 S.W.2d 836, 839 (Tex. App.–Fort Worth 1999, no pet.)). In its review of a civil matter, an appellate court has no discretion to fabricate an issue not raised in an appellant's brief, even though the court may perceive that the ends of justice require such a course. *Bankhead*, 135 S.W.3d at 163-64 (citing *Krumb v. Porter*, 152 S.W.2d 495, 496 (Tex. Civ. App.–San Antonio 1941, writ ref'd)). In short, ASK bore the responsibility to frame the issues for its appeal, and we cannot fabricate an issue that was not properly raised in ASK's brief. *See Bankhead*, 135 S.W.3d at 163-64.

The essential elements of a breach of contract action are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Lake v. Premier Transp.*, 246 S.W.3d 167, 173 (Tex. App.–Tyler 2007, no pet.); *E. Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55, 62 (Tex. App.–Tyler 1998, pet. denied). Although the trial court granted summary judgment on four alleged types of damages, it did not grant summary judgment on ASK's entire breach of contract claim. Instead, ASK's breach of contract cause of action was disposed of by the trial court's directed verdict. This directed verdict has not been appealed. Therefore, even if we were to hold that the trial court improperly granted summary judgment regarding the four types of damages, such a holding would not set aside the directed verdict regarding ASK's breach of contract cause of action. As such, reviving ASK's four types of damages would not revive the element of

6

breach, which was disposed of by directed verdict, and, therefore, would accomplish nothing.

We note that an appellate court may sometimes be able to consider issues not raised on appeal where those issues involve fundamental error. *See **In re B.L.D.***, 113 S.W.3d 340, 350-51 (Tex. 2003) (discussing the limited circumstances in which the fundamental error doctrine has been utilized by the supreme court). However, error in granting the directed verdict, if any, would not constitute fundamental error. *See **Wal-Mart Stores, Inc. v. Alexander***, 868 S.W.2d 322, 328 (Tex.1993) ("Fundamental error exists 'in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas.'"). Therefore, because ASK failed to appeal the trial court's directed verdict, ASK's first, second, third, and fourth issues have no bearing on the outcome of this appeal and we need not consider them. *See* TEX. R. APP. P. 47.1.

### *ASK's Counterarguments*

Before trial began, ASK informed the trial court that, although it did not wish to dismiss its breach of contract cause of action, it did not plan to present evidence of the three remaining types of damages. Based upon this representation, the trial court informed ASK that a failure to do so would place ASK at risk of a directed verdict.[4] After ASK continued to represent that it planned not to put on evidence of damages, CSUSA requested that the parties be realigned, with CSUSA serving as plaintiff and ASK as defendant. The trial court granted the motion.[5]

ASK now argues that

> [b]y realigning the parties, the trial court clearly expressed its view that ASK had no affirmative claim remaining before it. Such a view is consistent with CSUSA [having] obtained complete summary judgment relief on ASK's breach of contract claim. Thus, no basis existed for a directed verdict motion and the trial court's ruling in that regard was extraneous and should not be given any consideration.

However, the record reflects that the trial court realigned the parties after ASK announced that it did not plan to put on damages evidence in support of its breach of contract claim – not that the trial

---

[4] By this time, ASK's breach of contract claim was its sole remaining cause of action.

[5] In the end, the trial court issued a directed verdict, specifically stating that the directed verdict related not only to the element of damages, but also to the element of breach.

court believed no cause of action existed.  ASK's argument has no merit.

ASK also argues that

> . . . CSUSA founded its motion to realign the parties on the assertion that ASK had no remaining claims for affirmative relief.  Having prevailed on that allegation, CSUSA is now judicially estopped from advancing a contrary position.

Judicial estoppel applies where (1) the party against whom estoppel is sought, ***Long v. Knox***, 155 Tex. 581, 585, 291 S.W.2d 292, 295 (1956), (2) has alleged or admitted in his pleadings, an affidavit, or testimony, ***Watson v. Nortex Wholesale Nursery, Inc.***, 830 S.W.2d 747, 750 (Tex. App.–Tyler 1992, writ denied), (3) under oath, *id.* at 750-51, (4) in a prior judicial proceeding, *see id.*, (5) a "deliberate, clear, and unequivocal," ***Am. Sav. & Loan Ass'n of Houston v. Musick***, 531 S.W.2d 581, 589 (Tex. 1975), (6) assertion that is contrary to his current assertion, *see **Gibson v. Johnson***, 414 S.W.2d 235, 239 (Tex. Civ. App.–Tyler 1967, writ ref'd n.r.e.), (7) not "made inadvertently or by mistake," ***Calhoun v. Killian***, 888 S.W.2d 51, 55 (Tex. App.–Tyler 1994, writ denied), or by "fraud or duress," ***Long***, 155 Tex. at 585, 291 S.W.2d at 295, (8) and that was either "successfully interposed in defense to [the prior] action or proceeding," ***Permian Oil Co. v. Smith***, 129 Tex. 413, 440, 73 S.W.2d 490, 502 (1934), or was made in relation to a "question necessary for the determination of [the] prior adjudication," ***Bocanegra v. Aetna Life Ins. Co.***, 605 S.W.2d 848, 850 (Tex. 1980), and (9) is so inconsistent that its truth is disproved by the current assertion, ***Permian Oil***, 129 Tex. at 440, 73 S.W.2d at 502.

Here, CSUSA twice asserted a motion to realign the parties.  Our review of the record shows that neither attempt by CSUSA to realign the parties was based on an untrue assertion.  CSUSA's initial motion to realign was based on the assertion that ASK had no remaining causes of action.  At that point in the litigation, such an assertion was true – the trial court had entered a summary judgment order disposing of all causes of action maintained by ASK.[6]  Later, CSUSA reasserted its motion, but based upon a new argument, that ASK's election not to present evidence of damages left CSUSA as the only party planning to put on evidence of an entire cause of action.  Therefore,

---

[6] This order was later amended, allowing ASK to proceed to trial on its breach of contract cause of action.

judicial estoppel does not apply.

ASK further argues that it had an agreement with CSUSA to preserve its first four issues and that the trial court was advised of the agreement. ASK argues that, despite this agreement, the trial court chose to later change its position and granted a directed verdict on ASK's whole cause of action. To the extent that an agreement, if any, can be culled from the record, this agreement alleviated the need for ASK to present evidence of the three remaining types of damages. Under the alleged agreement, the trial court would then enter a directed verdict on those types of damages and that ASK could, nonetheless, proceed to appellate review of the trial court's summary judgment rulings. During the course of the discussion that constituted the alleged formation of the agreement, ASK stated to the trial court that it intended to put on evidence of the existence of a contract and breach. Therefore, assuming that such an agreement could be valid, it would have only protected ASK from the need to put on evidence of damages – not from the need to put on evidence of breach. Although ASK's argument may theoretically be a proper argument for appealing the directed verdict, it is not a proper argument in relation to ASK's first four issues.

Finally, ASK argues that "[o]nce ASK abandoned the three . . . categories of damages that survived summary judgment, CSUSA's summary judgment was complete as to the 'damages' element of ASK's breach of contract claim." For the reasons stated above, this argument is without merit. Further, the record directly contradicts this argument, showing that at the pretrial hearing, ASK explicitly stated that it was not dismissing its breach of contract cause of action.

**Summary Judgment – Single Business Enterprise**

In its fifth issue, ASK argues that the trial court improperly granted summary judgment as to all matters brought by ASK based upon breaches of contractual or common law duties allegedly committed by LC. According to ASK, the matters were brought pursuant to the "'single business enterprise' doctrine." ASK argues that a genuine issue of material fact existed as to the applicability of this doctrine and that, as such, summary judgment was not proper.

The single business enterprise doctrine is not a cause of action, but rather a theory for imposing liability where two or more business entities act as one. Under the doctrine, when businesses are not operated as separate entities but rather integrate their resources to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that

9

purpose. *See **Paramount Petroleum Corp. v. Taylor Rental Ctr.***, 712 S.W.2d 534, 536 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.). The single business enterprise doctrine is not synonymous with the doctrine of "alter ego." ***PHC-Minden, L.P. v. Kimberly-Clark Corp.***, 202 S.W.3d 193, 200 (Tex. App.–Tyler 2005), *rev'd on other grounds*, 235 S.W.3d 163 (Tex. 2007). Although the alter ego doctrine and the single business enterprise doctrine are both based on principles of equity, an important distinction is that the alter ego doctrine generally involves proof of fraud. ***Id.*** No proof of fraud is required under the single business enterprise doctrine. ***Id.*** Because of this significant difference between the two doctrines, we must address the viability of the single business enterprise doctrine under Texas law.

Texas law presumes that two separate corporations are distinct entities. ***BMC Software Belgium, N.V. v. Marchand***, 83 S.W.3d 789, 798 (Tex. 2002). The Fifth Circuit has noted that

> [m]any wholly-owned subsidiaries and closely-held corporations are not factually distinct from their owners. Many are in fact controlled and operated in close concert with the interests of the owners, and do not have a distinct factual existence: separate employees, offices, or properties; consolidated financial reporting and tax returns; and the like. Such conduct is perfectly natural and proper and provides no basis for ignoring legal independence.

***Gibraltar Sav. v. LDBrinkman Corp.***, 860 F.2d 1275, 1287 (5th Cir. 1988). Further, we have stated that "[t]he separate entity [nature] of corporations will be observed by the courts even in instances where one may dominate or control, or may even treat it as a mere department, instrumentality, or agency, of the other." ***Gregg County Appraisal Dist. v. Laidlaw Waste Sys., Inc.***, 907 S.W.2d 12, 17 (Tex. App.–Tyler 1995, writ denied) (citing ***Norton v. Integral Corp.***, 584 S.W.2d 932, 935 (Tex. Civ. App.–Austin 1979, no writ)). These statements are also applicable to the relationship between a parent corporation and its subsidiary limited liability company. *Cf.* ***PHC-Minden***, 202 S.W.3d at 200 (implicitly reaching a similar conclusion).

The supreme court recently noted that the single business enterprise doctrine is "a theory [it had] never endorsed." ***PHC-Minden, L.P. v. Kimberly-Clark Corp.***, 235 S.W.3d 163, 173 (Tex. 2007). Taking the entirety of Texas law into consideration, and considering the supreme court's explicit lack of endorsement for the single business enterprise doctrine, we hold that the doctrine does not exist under Texas law. *But see, e.g.,* ***SSP Partners v. Gladstrong Invs. (USA) Corp.***, 169

S.W.3d 27, 43 (Tex. App.–Corpus Christi 2005, pet. granted); *El Puerto de Liverpool, S.A. De C.V. v. Servi Mundo Llantero S.A. De C.V.*, 82 S.W.3d 622, 636 (Tex. App.–Corpus Christi 2002, pet. dism'd w.o.j.); *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 119 (Tex. App.–Beaumont 2001, pet. denied); *Paramount Petroleum*, 712 S.W.2d at 536.  Therefore, we hold that summary judgment was proper.  We overrule ASK's fifth issue.

**Summary Judgment – Breach of Fiduciary Duty**

In its sixth issue, ASK alleges that the trial court erroneously granted summary judgment against ASK regarding its breach of fiduciary duty cause of action.  More specifically, ASK poses the issue of "[w]hether the trial court erred in finding that CSUSA was not a fiduciary as a matter of law[.]"  According to ASK, "[it] claimed [in its pleadings] that CSUSA owed it a fiduciary duty which it breached by . . . financial mismanagement."  ASK argues that a principal-agent relationship is a recognized fiduciary relationship under Texas law, that its summary judgment evidence demonstrated that CSUSA was acting as an agent for ASK with respect to the administration, management, and accounting for ASK's charter school, and that CSUSA breached its fiduciary relationship due to financial mismanagement of the school.

The elements of a breach of fiduciary duty cause of action are (1) a fiduciary relationship must exist between the plaintiff and the defendant, (2) the defendant must have breached its fiduciary duty to the plaintiff, and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant.  *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200-01 (Tex. 2002) (discussing element of improper benefit); *Linder v. Citizens State Bank of Malakoff*, 528 S.W.2d 90, 94 (Tex. Civ. App.–Tyler 1975, writ ref'd n.r.e.) (setting forth all elements except improper benefit).  "Where the underlying facts are undisputed, determination[s] of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (quoting *Nat'l Med. Enters. v. Godbey*, 924 S.W.2d 123, 147 (Tex. 1996)).  Generally, agency is a special relationship that gives rise to a fiduciary duty. *See, e.g., Johnson*, 73 S.W.3d at 200.

In response to CSUSA's motion for summary judgment, ASK stated:

> 1.      CSUSA's Motion obscures the two different bases upon which fiduciary duties may arise.  First, there are formal fiduciary duties that arise by virtue of a contractual relationship between the parties. . . .  Additionally, in certain circumstances fiduciary duties may arise from the informal

11

relationship between the parties. These situations are typically those where the duty arises from a special relationship of trust and confidence. . . .

       2.      The cases cited by CSUSA in its motion are largely those discussing the second type of fiduciary relationship rather than the first. This is not a case where the claim of fiduciary duty is based upon a special relationship between the parties. The management contract placed CSUSA in the role of [ASK's] agent with regard to the administration, management, and accounting of [the charter school]. A principal-agent relationship is a fiduciary relationship as a matter of law. . . .

In short, ASK's sole defense against summary judgment was that the language of the contract created a principal-agent relationship between ASK and CSUSA.[7]

The management contract in question had three parties, ASK, LC, and CSUSA. It was to ASK and LC that the contract assigned the rights and obligations. CSUSA's president, Hage, also signed the contract on behalf of CSUSA. Above Hage's signature line for CSUSA, the text of the contract read:

CHARTER SCHOOLS USA, INC.
As to sections 4.1.5, 9 and 11.1 only

However, despite the "as to sections" language above the signature line, sections 4.1.5, 9, and 11.1 do not mention CSUSA or grant any rights to or impose any obligations upon CSUSA. In fact, the only party named at all in these sections is LC. Thus, the plain language of sections 4.1.5, 9, and 11.1 did not, in and of itself, create an agency relationship.[8]

CSUSA's motion for summary judgment was based on both no evidence and traditional grounds. Upon the filing of CSUSA's motion, the burden shifted to ASK to present evidence raising a genuine issue of material fact as to the existence of a fiduciary relationship. *See Mack Trucks*, 206 S.W.3d at 582. The only evidence brought by ASK was the management contract. In reviewing a ruling on a no evidence summary judgment motion, we review the evidence presented by the motion and response in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.

---

[7] "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c).

[8] We note that these sections refer to "CSUSA." However, the contract states that "CSUSA" is a reference to Charter Schools USA at Academy of Skills & Knowledge, L.C., which we refer to as "LC." The party we refer to in this opinion as "CSUSA" is referred to in the contract as "Charter Schools USA, Inc.," and not "CSUSA."

*Id.* However, the sole evidence brought forth by ASK was no evidence at all. Therefore, the trial court properly granted summary judgment. *See Sudan*, 199 S.W.3d at 292 (a no evidence motion for summary judgment must be granted if the respondent produces no summary judgment evidence raising a genuine issue of material fact on the element moved upon); *see also* TEX. R. CIV. P. 166a(i). We overrule ASK's sixth issue.

## Summary Judgment – Negligence

In its seventh issue, ASK asserts that the trial court erroneously granted summary judgment dismissing ASK's claim for negligence against CSUSA. CSUSA argues here, as it did at summary judgment, that ASK's negligence claims, as pleaded, are barred by the "economic loss rule." In turn, ASK argues, as it did at summary judgment, that its claims are not barred by that rule. The question before this court is the proper application of the economic loss rule to the relevant pleading, titled by ASK as "Plaintiff's First Amended Original Petition."

The economic loss rule generally precludes recovery in tort where a plaintiff's only injury is an economic loss to the subject of a contract. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991); *see also Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). The focus of the rule "is on determining whether the injury is to the subject of the contract itself." *Lamar Homes*, 242 S.W.3d at 12; *see DeLanney*, 809 S.W.2d at 494-95. In operation, the rule restricts contracting parties to contractual remedies for such economic losses, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence. *Lamar Homes*, 242 S.W.3d at 12-13 (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

ASK sought economic and exemplary damages in relation to its negligence cause of action against CSUSA. However, it is not the nature of the damages sought, but the nature of the injury, here economic losses, that affects the applicability of the economic loss rule. *See DeLanney*, 809 S.W.2d at 494-95; *see also Lamar Homes*, 242 S.W.3d at 12. Therefore, we examine ASK's pleading to determine whether the injuries alleged are "to the subject of the contract itself." *See Lamar Homes*, 242 S.W.3d at 12; *see also DeLanney*, 809 S.W.2d at 494-95.

At first reading, it appears that ASK's allegations of injury are not limited as being "to the

13

subject of the contract itself."[9]  Instead, ASK's allegations are painted with a broad brush, referring to CSUSA's negligence in the administration, management, and supervision of ASK's charter school.  However, we note that, earlier in ASK's pleading, ASK defined the alleged nature of the relationship between it and CSUSA as a contractual one involving the operation and management of ASK's charter school.[10]  In defining CSUSA's alleged role, ASK prefaced its statements with "[p]ursuant to the management agreement," "[a]s part of its duties," and "[b]y virtue of the contract."  In addition, ASK asserted that it was the management agreement "whereby CSUSA became the manager of [the charter school]."  We must consider these allegations in construing ASK's negligence allegations.

In light of the language found throughout ASK's pleading and used to define the relationship between ASK and CSUSA, we must conclude that the injuries complained of by ASK are "to the subject of the contract itself."  Therefore, ASK's negligence cause of action, as pleaded, was barred by the economic loss rule. *See Lamar Homes*, 242 S.W.3d at 12-13; *DeLanney*, 809 S.W.2d at 494-95.  The trial court properly granted summary judgment.  *See Mack Trucks*, 206 S.W.3d at 581-82 (a summary judgment motion pursuant to Rule 166a(i) is essentially a motion for a pretrial directed verdict).  We overrule ASK's seventh issue.

## Summary Judgment – Management Fees

In its third cross issue, CSUSA asserts that the trial court erred by granting summary judgment against CSUSA regarding alleged breach of contract damages for management fees owed to LC.  At summary judgment, ASK argued that, because the management contract, as well as

---

[9] ASK's petition includes the following paragraph:

> 14.    CSUSA has failed to exercise ordinary care in the administration of [the school]. As the manager of [the school,] CSUSA had a duty to perform its operations and provide its services in a good and workmanlike manner.  CSUSA has failed to fulfill this duty; therefore, CSUSA is guilty of negligence.  In this regard, CSUSA was negligent in its budgeting of the school and in not recognizing the financial disaster to which the school would be exposed.  CSUSA was also negligent with regard to reporting certain matters, such as alternative accountability, to the State of Texas.  Finally, CSUSA was negligent in the overall manner in which it supervised the educational, financial, and management aspects of [the school.] ASK has been damaged as a proximate result of CSUSA's negligent acts.

[10] "On or about March 2001, ASK contracted with [CSUSA] to operate and manage an institution of learning known at that time as The Academy of Skills & Knowledge."

CSUSA's interpretation of that contract, allocated management fees to LC and not to CSUSA, CSUSA was not entitled to claim those fees as damages. CSUSA had produced a document which it claimed was evidence that LC assigned the cause of action to CSUSA. ASK challenged the sufficiency of this document and argued that it was no evidence of a proper assignment.

The management contract obligated ASK to pay management fees to LC, not CSUSA. It is elemental that a party may not collect fees under a contract when that contract does not convey any right to such fees. Therefore, our analysis hinges on whether the document relied upon by CSUSA was sufficient evidence of an assignment of such a right to CSUSA. The document reads, in pertinent part, as follows:

### ASSIGNMENT OF CLAIM FOR DAMAGES

_____For good and valuable consideration, . . . [LC] . . . assigns and transfers to [CSUSA] . . . any and all sums of money due or owing to [LC,] and all claims, demands[,] and cause or causes of action of whatsoever kind and nature that [LC] now has, or may have, against [ASK,] arising out of, or for, any loss, injury, or damages sustained by [LC,] in connection with the collection of any and all management fees due to [LC] and any monies advanced by [LC] to [ASK,] pursuant to that certain Management Agreement among [LC, CSUSA,] and [ASK,] dated March 2001.

. . . .

[LC] . . . *appoints [CSUSA] as its attorney with power* to demand and receive[] satisfaction of the . . . claim and, *in the name of [LC]*, but at [CSUSA's] expense, to sue or enter into any other legal process necessary for the collection of this claim.

(emphasis added).

The document allegedly assigned to CSUSA (1) "any and all sums of money due or owing to [LC]" and (2) "causes of action . . . for . . . damages sustained by [LC] in connection with the collection of . . . management fees due to [LC.]" However, the second quoted paragraph of the document contradicts that any "assignment," as the term is generally understood, occurred. Instead, reading this document as a whole, the right conveyed by LC to CSUSA was the right to "sue or enter into any other legal process necessary for the collection of this claim" in "the name of [LC]." Logic dictates that LC could not authorize CSUSA to sue in its name if LC was assigning to CSUSA its right to sue. Therefore, properly interpreted, this document merely sought to authorize CSUSA to proceed in LC's name.

CSUSA's cause of action was brought in the name of CSUSA, not in the name of LC. The

15

document was not sufficient to assign such a right to CSUSA and, therefore, in the absence of other evidence, there was no evidence that the necessary assignment was made. Therefore, summary judgment was proper. *See Sudan*, 199 S.W.3d at 292 (a no evidence motion for summary judgment must be granted if the respondent produces no summary judgment evidence raising a genuine issue of material fact on the element moved upon); *see also* TEX. R. CIV. P. 166a(i). We overrule CSUSA's third cross issue.

### DIRECTED VERDICT

In its tenth issue, ASK asserts that the trial court erred by refusing to grant a directed verdict on CSUSA's cause of action for breach of an oral contract. When reviewing a trial court's ruling on a motion for directed verdict, we apply the same standard of review applied to a motion for no evidence summary judgment. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

As alleged by CSUSA in its Fourth Amended Counterclaim:

> . . . CSUSA advanced CSUSA's own money to pay expenses on behalf of [ASK] for which CSUSA was to be reimbursed by [ASK]. . . .
> . . . [ASK] has breached the parties' oral agreement by failing to reimburse monies advanced by CSUSA on behalf of [ASK]. CSUSA and [ASK] engaged in a course of dealing whereby CSUSA advanced money into the school's operating account. The parties orally agreed the money would be paid back. Alternatively, the parties' conduct gave rise to an implied contract that [ASK] has breached by failing to pay back the monies advanced.

At trial, ASK moved for a directed verdict, asserting that the alleged oral contract constituted a prohibited loan under what is now section 12.124 of the Texas Education Code. The trial court denied ASK's motion. Section 12.124 reads, in pertinent part, as follows:

> **§ 12.124. Loans From Management Company Prohibited**
>
> (a) The charter holder or the governing body of an open-enrollment charter school may not accept a loan from a management company that has a contract to provide management services to:
>
> > (1) that charter school; or
> >
> > (2) another charter school that operates under a charter granted to the charter holder.

TEX. EDUC. CODE ANN. § 12.124(a) (Vernon 2006). As both the title and text of section 12.124

16

show, loans between the charter holder of an open-enrollment charter school and a management company having a contract to provide management services to that charter school are prohibited. *See id.*; *see also* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005) ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider . . . [the] title [of the statute].").

ASK's motion for directed verdict came after the closing of evidence. At this point, undisputed evidence was before the trial court that ASK was the charter holder of an open-enrollment charter school. *See* TEX. EDUC. CODE ANN. § 12.1012(1) (Vernon 2006) ("'Charter holder' means the entity to which a charter is granted under this subchapter."). Likewise, CSUSA's own pleading, its Fourth Amended Counterclaim, alleged that CSUSA had entered into a management agreement with ASK. As alleged in CSUSA's pleading, "[p]ursuant to the Management Agreement, from March of 2001 until September 13, 2002, CSUSA provided various accounting, budgeting, cash management and financial reporting services to [ASK's charter school.]"

According to Texas Education Code section 12.1012,

> "[m]anagement services" means services related to the management or operation of an open-enrollment charter school, including:
>
>   (A) planning, operating, supervising, and evaluating the school's educational programs, services, and facilities;
>
>   (B) making recommendations to the governing body of the school relating to the selection of school personnel;
>
>   (C) managing the school's day-to-day operations as its administrative manager;
>
>   (D) preparing and submitting to the governing body of the school a proposed budget;
>
>   (E) recommending policies to be adopted by the governing body of the school, developing appropriate procedures to implement policies adopted by the governing body of the school, and overseeing the implementation of adopted policies; and
>
>   (F) providing leadership for the attainment of student performance at the school based on the indicators adopted under Section 39.051 or by the governing body of the school.

TEX. EDUC. CODE ANN. § 12.1012(5) (Vernon 2006). Therefore, as pleaded by CSUSA, CSUSA was providing "management services" to ASK's open-enrollment charter school during the period from "March of 2001 until September 13, 2002." *See id.* Further, as pleaded, and in the context of

the evidence at trial, CSUSA met the definition of a "management company." *See* TEX. EDUC. CODE ANN. § 12.1012(4) (Vernon 2006) ("'Management company' means a person, other than a charter holder, who provides management services for an open-enrollment charter school.").

The transactions in question were termed "advances" by CSUSA. The evidence at trial established that the "advances" were made during the time that the alleged management agreement was pleaded to have been in force.[11] Likewise, CSUSA had represented to the trial court that the discussion which resulted in the formation of the oral contract regarding the claimed "advances" began in "mid-September" of 2001, also during the time that the alleged management agreement was pleaded to have been in force.[12] The evidence at trial also showed that there were no goods or services "advanced" or expected at repayment. Instead, these "advances" constituted pure loans of money. *See Bird v. First Deposit Nat. Bank*, 994 S.W.2d 280, 282 (Tex. App.–El Paso 1999, pet. denied) (reaching a similar conclusion regarding credit card "cash advances"). Therefore, the "advances" made by CSUSA constituted "loans," and, based on the pleadings and the evidence, these loans were prohibited under section 12.124. *See* TEX. EDUC. CODE ANN. § 12.124(a).[13]

A contract to do a thing that cannot be performed without a violation of the law is void. *Lewis v. Davis*, 145 Tex. 468, 472, 199 S.W.2d 146, 148-49 (1947). The policy is not to protect or punish either party to the contract, but is for the benefit of the public. *Lewis*, 145 Tex. at 477, 199 S.W.2d at 151. "In Texas there is a presumption that contracting parties are knowledgeable of the law and contract accordingly." *Plumlee v. Paddock*, 832 S.W.2d 757, 759 (Tex. App.–Fort Worth

---

[11] At the pretrial hearing, CSUSA made clear to the trial court that it was not proceeding on amounts allegedly advanced to CSUSA before September 2001 because it expected the evidence to show that discussions resulting in the formation of CSUSA's oral contract regarding the claimed advances began in "mid-September" of 2001. (We note that the reporter's record attributes the statement in question to counsel for ASK; however, read in context, it is clear that the statement was made by counsel for CSUSA. Any other reading would render the text nonsensical. Regardless of the identity of the speaker, the trial court could have only been left with the impression that the discussions began in "mid-September.") No evidence was presented that explicitly and unambiguously contradicted this position at trial. Likewise, CSUSA never explicitly changed its position. As such, the trial court should have concluded that the formation of the oral contract or contracts in question occurred on or after the effective date of section 12.124 – September 1, 2001.

[12] *See* note 11.

[13] CSUSA argues that section 12.124 merely prohibited ASK from accepting a loan, not CSUSA from giving a loan. For the reasons stated above, we disagree.

18

1992, writ denied). Accordingly, Texas courts will generally leave the parties as they find them. *See Mercury Life & Health Co. v. Hughes*, 271 S.W.2d 842, 846 (Tex. Civ. App.–San Antonio 1954, writ ref'd). Courts no more favor aiding one attempting to enforce such a contract than they are disposed to assist the party who uses the illegality to avoid liability. *Loggins v. Stewart*, 218 S.W.2d 1011, 1015 (Tex. Civ. App.–El Paso 1949, writ ref'd).

Even were the alleged contract in question not void, parties who wish to recover on such a contract must prove their case without reliance on their own illegal act. *Kokernot v. Gilstrap*, 143 Tex. 595, 600, 187 S.W.2d 368, 370 (1945). As pleaded, CSUSA cannot prove the existence of a contract, or its right to recover, without proving its own illegal conduct of providing prohibited loans to ASK. *See* TEX. EDUC. CODE ANN. § 12.124(a). Finally, while exceptions exist to these rules, none of those exceptions apply to CSUSA. *See Plumlee*, 832 S.W.2d at 759-60 (setting forth three possible exceptions). The trial court should have granted ASK's motion for a directed verdict. We sustain ASK's tenth issue.

## CONCLUSION

Because we have sustained ASK's tenth issue, we reverse CSUSA's judgment for money damages and attorney's fees against ASK and render judgment that CSUSA take nothing. Having declined to address ASK's first, second, third, and fourth issues, and having overruled ASK's fifth, sixth, and seventh issues and CSUSA's third cross issue, we affirm the trial court's judgment in all other respects.[14]

   SAM GRIFFITH   
Justice

Opinion delivered June 25, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[14] In ASK's remaining issues, it complained that the trial court abused its discretion in denying ASK the opportunity to amend its pleadings to add a statute of frauds defense, erred by permitting hearsay testimony at trial, and erred in refusing certain jury instructions requested by ASK. ASK also complained that the evidence was legally and factually insufficient to support the trial court's judgment. In its other two cross issues, CSUSA argued that the trial court's directed verdict rendered moot ASK's contract damages and single business enterprise issues. Because of our resolution of this appeal, we do not consider the parties' remaining issues necessary to final disposition and therefore do not address them. *See* TEX. R. APP. P. 47.1.