**Affirmed and Opinion filed December 4, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00906-CV

### REICH & BINSTOCK, LLP, Appellant

### V.

### ROBERT SCATES, INDIVIDUALLY AND D/B/A SCATES ENGINEERING CONSULTANTS, Appellee

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2010-46208**

## O P I N I O N

In this appeal from a bench trial, a law firm seeks to set aside the trial court's determination that its payment arrangement with an expert violates the Texas Disciplinary Rules of Professional Conduct. The law firm further asks that we reverse the trial court's grant of equitable relief to the expert based on a theory of quantum meruit. We affirm.

## BACKGROUND

Appellee Robert Scates worked as a consulting and occasionally testifying expert for appellant Reich & Binstock, LLP (R&B), a Houston law firm, for numerous years. Scates had other clients, but he primarily worked for R&B on its mass tort cases. During most of his employment with R&B, Scates was compensated under a verbal employment agreement (the Agreement), documented by several emails and other written communication between the parties. After he completed his graduate studies in chemical engineering, he continued to provide the firm with the same services under the d/b/a of Scates Engineering Consulting. A dispute arose concerning payment of several of Scates's invoices. The case was tried to the bench in June 2013 as a suit on a sworn account and for equitable relief.[1]

The dispute during the bench trial related to the parties' conflicting interpretation of the Agreement. The parties agreed that Scates was to invoice the firm $40 per hour of work that would be paid in the ordinary course of business. The parties further agreed that Scates would be paid an additional $30 per hour for that same work upon "settlement" of the case. Scates testified that his "due on settlement" fee was due and payable on any settlement, profitable to R&B or not. R&B's representative, Dennis Reich, stated that Scates's additional fee was a "bonus," which would only be paid if R&B made a profit after expenses and client distribution. Reich testified that Scates's "bonus" was paid out of the firm's fees for the particular case on which Scates had worked, not from a client's share. According to Reich, Scates's additional fee was not paid in the same manner as other expenses, such as those for overhead. The parties agreed that if a case did

---

[1] Scates initially sued for breach of contract, but he nonsuited his breach-of-contract claim before the bench trial.

2

not settle, Scates would not receive the additional $30 per hour. In one prior case described by the parties, there was a settlement but no profit to R&B; Scates was not paid the additional $30 per hour for this case.

R&B agreed that it owed Scates for unpaid time at his base rate of $40 per hour. Scates presented evidence that he was owed $47,608.70 for unpaid time at this base rate. Further, Scates presented evidence of an additional $108,802.51 of time and expenses he was due based on two particular cases that had settled, but had not resulted in a profit to R&B. Reich acknowledged that Scates performed the services for which he had billed R&B, that these services were valuable, and that Scates billed at a reasonable rate. Finally, although the parties agreed that Scates predominantly served as a "consulting expert" in the cases on which he worked for the firm, Scates specifically testified that he had been paid a "due on settlement" fee of nearly $30,000 in a case for which he served as a testifying expert.

Based on the parties' course of dealings and other evidence, the trial court found that the Agreement violated the Texas Disciplinary Rules of Professional Conduct (the Disciplinary Rules) by (1) making an "expert's" compensation contingent on the outcome of the case and (2) splitting legal fees with a non-lawyer. *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.04(b), 5.04(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). Because the Agreement violated the Disciplinary Rules, the trial court determined that it was unenforceable as against public policy. But the court awarded Scates the value of his services—$156,411.21—under a theory of quantum meruit. The court additionally awarded Scates attorney's fees and interest. The trial court signed findings of fact and conclusions of law.

3

R&B filed a motion for new trial, which was overruled by the trial court. This appeal timely followed.

## ISSUES PRESENTED

R&B challenges the trial court's award in five issues. The first two concern the propriety of the trial court's determination that the Agreement was void as against public policy because it violated the Disciplinary Rules. R&B's third through fifth issues all involve the trial court's determination that Scates was entitled to equitable relief. Finally, in a cross-issue, Scates requests that we remand this case for a determination of the appropriate appellate legal fees. We group these issues as listed above and discuss them in turn.

## VIOLATION OF THE DISCIPLINARY RULES

In its first two issues, R&B asserts that the Agreement does not violate the Disciplinary Rules. We begin our analysis by noting that R&B does not assert that, if the Agreement violates an ethical rule, it is not unenforceable as against public policy. *See Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g) (explaining that a court may deem the Disciplinary Rules to be an expression of public policy such that a contract violating them is unenforceable as against public policy). Thus, we presume for our analysis in this case that, if the Agreement violated the Disciplinary Rules, it is unenforceable as against public policy.

As described above, the trial court concluded that the Agreement between Scates and R&B violated Rules 3.04 and 5.04 of the Disciplinary Rules. *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.04(b), 5.04(a). Rule 3.04 provides, in pertinent part,

> A lawyer shall not . . . . falsify evidence, counsel or assist a witness to testify falsely, *or pay, offer to pay, or acquiesce in the offer or*

4

> *payment of compensation to a witness* or other entity *contingent upon* the content of the testimony of the witness *or the outcome of the case*.

Tex. Disciplinary Rules Prof'l Conduct R. 3.04(b) (emphasis added). Rule 5.04, on the other hand, prohibits the sharing of legal fees with a non-lawyer, with certain exceptions not applicable here. Tex. Disciplinary Rules Prof'l Conduct R. 5.04(a). We conclude that the Agreement violates both rules for the following reasons.

## A. The trial court found that R&B retained Scates as both a consulting and testifying expert.

In its findings of fact, the trial court found that Scates was retained to consult and testify for R&B on its mass tort cases. The trial court specifically found that in one case, which is not subject to this dispute, Scates was paid nearly $30,000 when he had served as a testifying expert. These unchallenged factual findings are fatal to R&B's claim that the Agreement did not violate Disciplinary Rule 3.04(b).

Because R&B has not specifically challenged any of the trial court's factual findings, they are binding on this court unless the contrary is established as a matter of law or if there is no evidence to support the findings. *Pierre v. Ollivierre*, No. 14-10-00585-CV, 2011 WL 6287962, at *3–4 (Tex. App.—Houston [14th Dist.] Dec. 15, 2011, no pet.) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)). R&B does not assert that the contrary of this finding is established as a matter of law or that there is no evidence to support it. Further, our review of the record confirms that the trial court's findings described above are supported by adequate evidence. Thus, in this case, we review the trial court's conclusions of law to determine whether, based on the facts, they are correct. *See id.* (citing *Zagorski v. Zagorski*, 116 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g)).

5

As noted above, Scates described a case in which he provided expert testimony and was paid the additional fees on settlement of the case. Based on the undisputed fact that, under the terms of the Agreement, Scates had been paid as a testifying expert, the trial court did not err in determining that the Agreement violated Disciplinary Rule 3.04(b).

Because the trial court correctly concluded that the Agreement violated Disciplinary Rule 3.04(b), we overrule R&B's first issue.

**B.    The trial court found that a portion of Scates's fee was paid out of R&B's legal fees.**

The trial court found that Scates's fee was paid out of R&B's fee, not as a client expense or as overhead or as a "gratuitous bonus." The court further found that Scates's "due on settlement fee" was contingent upon R&B's receiving legal fees. As discussed above, Rule 5.04(a) provides, with exceptions not applicable here, that "a lawyer or law firm shall not share or promise to share legal fees with a non-lawyer." Tex. Disciplinary R. Prof'l Conduct 5.04(a). Based on these unchallenged findings, which are supported by the record,[2] we conclude that the Agreement violates Disciplinary Rule 5.04(a) because it calls for improper fee splitting between a lawyer and a non-lawyer.

R&B urges that payment of Scates's "bonus" does not violate this rule because it was neither a percentage of profit nor a percentage of legal fees generated by a particular case. *See* Tex. Disciplinary R. Prof'l Conduct 5.04(a), cmt. 3 ("[T]he payment of an annual or other bonus does not constitute the sharing of legal fees if the bonus is neither based on a percentage of the law firm's profits

---

[2] *See Pierre*, 2011 WL 6287962, at *3–4 (unchallenged factual findings are binding on this court unless there is unless the contrary is established as a matter of law or there is no evidence to support the findings).

or on a percentage of particular legal fees. . . .").  We must disagree with R&B's proposition.

In *State Bar of Texas v. Faubion*, this court considered whether similar payments by a lawyer to an investigator constituted "illegal fee splitting."  821 S.W.2d 203, 307 (Tex. App.—Houston [14th Dist.] 1991, writ denied).  There, the lawyer paid his investigator a salary, car allowance, and incentive bonus.  *Id.*  "Attorney's fees recovered in cases worked on by [the investigator] were deposited into [the attorney]'s firm operating account."  *Id.*  On paydays, the investigator's compensation was computed at 20 to 33 percent of "the gross fees calculated upon [the investigator]'s time involvement in a particular case."  *Id.*  After examining Rule 5.04, we determined that the lawyer was sharing legal fees with the investigator based on the investigator's involvement in a particular case.  *Id.* at 208.  We concluded that these payments "were not analogous to an hourly wage; they were based on a 'percentage of particular legal fees.'"  *Id.*

R&B reads *Faubion* to permit sharing legal fees if the parties are not sharing a stated percentage of those fees or if the payment is a bonus.  R&B reads *Faubion* too narrowly.  In *Faubion*, we held that "an annual or other bonus does not constitute the sharing of legal fees if the bonus is neither based on a percentage of the law firm's profits or on a percentage of particular legal fees."  *Id.*  Although the payments at issue under the Agreement here are couched both as a "bonus" and as an hourly amount, Scates was paid an additional $30 per hour for each hour he worked out of the particular legal fees that R&B earned when R&B settled for a profit.  We agree this amount is not a sum-certain "percentage" of R&B's fees.  We do not agree that this amount is not based upon a percentage of the law firm's profits.  Scates's additional payment is for a sum certain and is based upon a percentage of R&B's profits; that is, the payment is made only if R&B makes a

7

profit: fees above zero percent. And, thus, the payment is shared from a portion—or percentage—of the firm's fees from particular cases. It was entirely uncontested that Scates's additional $30 per hour was due only upon profitable settlement. Thus, R&B paid the additional sum out of R&B's fees only when R&B made a profit on a case after the client was paid and other expenses were deducted.

Though Scates received an hourly rate payable without condition, the additional payment was contingent upon the success of the R&B case upon which he worked. As such, the additional sum payable to Scates is far more like the percentage payment "reward" we rejected in *Faubion* than the unconditional payment of an hourly rate or an annual bonus in a successful year. We conclude that the firm was improperly splitting its fees with Scates under the terms of the Agreement found by the trial court. *See* Tex. Disciplinary R. Prof'l Conduct R. 5.04(a).

Accordingly, we overrule R&B's second issue because the trial court's conclusion that the Agreement involved improper fee splitting is correct.

## EQUITABLE RELIEF

In its third issue, R&B asserts that the trial court erred in providing Scates an equitable remedy because it declared the Agreement unenforceable. R&B next asserts that the amount of the quantum meruit award constitutes an impermissible windfall. Finally, in its fifth and final issue, R&B urges that the trial court abused its discretion by providing an equitable remedy despite Scates's unclean hands. We consider each of these issues in turn.

### A. Scates proved his case without reliance on his own illegal act.

R&B complains that a contract that violates a disciplinary rule is "void and unenforceable as against public policy." In such a case, according to R&B, a court

8

refrains from using its equity powers to favor either party to the contract. For this proposition, R&B relies on cases involving illegal contracts. *See Plumlee v. Paddock*, 832 S.W.2d 757, 759 (Tex. App.—Fort Worth 1992, writ denied) (refusing to provide equitable relief to party who was involved in fee-splitting agreement that violated both the Disciplinary Rules and the Texas Penal Code); *see also Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.*, 260 S.W.3d 529, 545 (Tex. App.—Tyler 2008, pet. denied) (oral contract violating Texas Education Code declared void; no equitable relief available because "parties who wish to recover on such a contract must prove their case without reliance on their own illegal act").

The two cases on which R&B relies for its proposition that Scates is not entitled to equitable relief both acknowledge that parties who wish to recover on an illegal contract must prove their case without reliance on their own illegal act. *Academy of Skills & Knowledge*, 260 S.W.3d at 545; *Plumlee*, 832 S.W.2d at 759; *cf. Sw. Underground Supply & Env'l Servs., Inc. v. Amerivac, Inc.*, 894 S.W.2d 15, 18 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (possible illegality of contract resulting from impermissible non-compete clause did not preclude party from recovering on a theory of quantum meruit). Here, Scates proved his case without relying on any "illegal" act on his part: he established that he billed R&B for his valuable services as an expert. He was not involved in any illegal act, such as barratry. *Cf. Plumlee*, 832 S.W.2d at 759 ("Plumlee cannot prove the existence of a contract, nor his right to recover, without proving his own illegal conduct in entering a barratry contract.").

For the foregoing reasons, we overrule R&B's third issue.

**B.** **The trial court determined that Scates performed valuable services for which he billed R&B at reasonable rates.**

In issue four, R&B urges that Scates's recovery constitutes an impermissible windfall. It asserts that under the trial court's construction of the agreement, Scates was not entitled to collect any of the additional "due on settlement" fees and that he billed at a higher hourly rate than that of other engineers working on the cases for which he sought payment.

Quantum meruit is an equitable remedy based on an implied promise to pay for benefits received that does not arise out of a contract, but is independent of it. *Ellis v. Reliant Energy Retail Servs., L.L.C.*, 418 S.W.3d 235, 255 (Tex. App.— Houston [14th Dist.] 2013, no pet.). To recover under a theory of quantum meruit, a party must establish, as applicable here, (1) that valuable services were rendered, (2) for the person sought to be charged, (3) the services were accepted by the person sought to be charged and used an enjoyed by him, and (4) the person sought to be charged was notified that the person performing the services expected to be paid for them. *See id.*

Here, the trial court found that Scates performed valuable services for which he had an expectation he would be paid; the record reflects that Scates billed R&B for his services. The trial court further found that R&B's representative, Dennis Reich, agreed that Scates's rate was reasonable. Finally, the court found that the value of Scates's unpaid work is $156,411.21. These findings are uncontested and supported by the record. *See Pierre*, 2011 WL 6287962, at *3–4. Without a challenge to these findings, we are bound by them. *See id.* These findings support the trial court's determination that Scates was entitled to judgment for the reasonable value of his services under the theory of quantum meruit. *See Ellis*, 418 S.W.3d at 255. The only evidence of a reasonable rate in this case was

Scates'stestimony regarding his rates and Reich's testimony that Scates billed R&B at reasonable rates. Hence, there is simply no evidence that the Scates received a windfall by being paid what even R&B acknowledged was a reasonable rate for his services.

Accordingly, we overrule R&B's fourth issue.

## C. There is insufficient evidence to show that Scates had "unclean hands."

In its fifth and final issue, R&B asserts that the trial court abused its discretion by providing an equitable remedy despite Scates's "unclean hands." It is within the trial court's sound discretion to determine whether a party has unclean hands and whether the party's alleged fraudulent actions should bar equitable relief. *Willis v. Donnelly*, 118 S.W.3d 10, 38 (Tex. App.—Houston [14th Dist.] 2003), *rev'd on other grounds*, 199 S.W.3d 262 (Tex. 2006).

Here, the trial court specifically stated as follows on this issue: "There was insufficient evidence for the Court to make any finding as to whether Scates[] defrauded the court or R&B relating to an unaccounted for signature on the Employment Agreement attached to defendant's Exhibit 14, or in any other respect." The trial court, as the finder of fact, was charged with making credibility determinations. *See 24/7 Grill, LLC v. Clark*, No. 14-13-00099-CV, 2014 WL 1410210, at *3 (Tex. App.—Houston [14th Dist.] Apr. 10, 2014, pet. denied) (citing *Glassman & Glassman v. Somoza*, 694 S.W.2d 174, 176 (Tex. App.—Houston [14th Dist.] 1985, no writ.)). The trial court here determined that there was insufficient evidence to support a finding that Scates committed any fraudulent actions.

It was undisputed that Reich's signature on the contracts under which Scates initially brought suit for breach of contract were generated electronically.[3] Scates testified that he did not place Reich's signature on the contracts. Reich testified that he did not authorize the placement of his signature on these documents, but that he did not know who had done so. Reich's legal assistant testified regarding the uses of Reich's electronic signature, but provided no testimony that Scates ever accessed it. R&B's IT support professional testified that he did not know whether Scates had ever accessed Reich's electronic signature.

We conclude that any finding about whether Scates had placed Reich's electronic signature would thus be based solely on a credibility determination by the trial court—i.e., whether the trial court believed Scates's denial that he placed Reich's signature on the documents at issue. The trial court explicitly stated that there was insufficient evidence from which it could make such a finding, thus implicitly determining that there was insufficient credible evidence that Scates defrauded R&B. We decline R&B's invitation to override the trial court's determination.

For these reasons, we overrule R&B's fifth and final issue.

### APPELLATE ATTORNEY'S FEES

In a cross-issue, Scates requests that we remand this case for a determination of appropriate appellate attorney's fees. Specifically, Scates requests that we affirm the trial court's judgment, yet remand to the trial court for trial on the issue of appellate attorney's fees. There are at least two problems with this request.

First, Scates failed to file a notice of appeal. "A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal." Tex.

---

[3] As noted above, Scates nonsuited his breach-of-contract claim and the trial was conducted on his suit on a sworn account and for equitable relief.

12

R. App. P. 25.1(c). Although not couched as such, Scates's issue would require us to alter the trial court's judgment because appellate attorney's fees were not awarded in the judgment. In fact, the award of conditional appellate attorney's fees were struck from the judgment by the trial court, although the trial court noted in its findings of fact and conclusions of law that "[a]ppropriate fees for the appeal may be considered and awarded, if warranted, after appeal." Such a request to alter the trial court's judgment can only be considered when the party seeking the alteration has filed a notice of appeal. *See Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 584 (Tex. 2002); *Frontier Logistics, L.P. v. Nat'l Prop. Holdings, L.P.*, 417 S.W.3d 656, 666–67 (Tex. App.—Houston [14th Dist.] 2013, pet. filed).

Second, as noted above, Scates requests that we affirm the judgment and remand. But our rules of appellate procedure only permit us to:

(a)    Affirm the trial court's judgment in whole or in part;

(b)    Modify the trial court's judgment and affirm as modified;

(c)    Reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered;

(d)    Reverse the trial court's judgment and remand the case for further proceedings;

(e)    Vacate the trial court's judgment and dismiss the case; or

(f)    Dismiss the appeal.

Tex. R. App. P. 43.2. There is simply no authority for us to affirm and remand.[4]

Because Scates seeks more relief than was granted in the trial court's judgment, he was required to file a notice of appeal. Further, his request that we

---

[4] During oral argument, Scates's counsel confirmed that Scates sought affirmance of the trial court's judgment and remand for a trial on appellate attorney's fees.

affirm the trial court's judgment, yet remand for a trial on appellate attorney's fees is not well-taken. Accordingly, we reject Scates's cross-issue.

## CONCLUSION

We have determined that the trial court did not err in concluding that the Agreement violated the Disciplinary Rules. We thus have overruled R&B's first two issues. We further have concluded that the trial court did not err in granting Scates equitable relief, overruling R&B's final three issues. We affirm the trial court's judgment.


/s/        Sharon McCally
                Justice


Panel consists of Justices McCally, Brown, and Wise.